UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW IAN SMITH,
    Plaintiff,

v.                                                                    Case No. 8:25-cv-1347-TPB-NHA

SERGEANT M. ADEKAYODE,

    Defendant.
_____/

## **ORDER**

Andrew Ian Smith, a Florida state prisoner,[1] sues Sergeant M. Adekayode for federal civil rights violations under 42 U.S.C. § 1983. (Doc. 1) He alleges an Eighth Amendment violation and state tort claims stemming from Sergeant Adekayode's use of force during an incident that occurred at the Polk Correctional Institution on February 24, 2025. Sergeant Adekayode moves to dismiss the Complaint because Smith neglected to exhaust his administrative remedies before filing suit. (Doc. 13)

An earlier order directs Smith to respond to the motion to dismiss on or before February 12, 2026. (Doc. 14) The order cautions Adekayode that

---

[1] Smith is an inmate of the Florida Department of Corrections serving a seven-year sentence for trafficking in amphetamines and fentanyl and related offenses. *State v. Smith*, No. 2020-CF-000710 (Fla. 6th Jud. Cir.). The events giving rise to this action occurred when he was housed at the Polk Correctional Institution. Smith is presently confined at The Transition House of Kissimmee. *See* Florida DOC Offender Information Search at https://pubapps.fdc.myflorida.com/OffenderSearch/Search (last accessed March 31, 2026).

"[f]ailure to comply shall result in the motion being treated as unopposed." (*Id.*) The order was mailed to Smith at his current place of incarceration and was not returned as undeliverable. To date, Smith has not responded to Sergeant Adekayode's motion to dismiss, nor has he sought an extension of time to do so. Accordingly, the motion to dismiss is deemed unopposed. M.D. Fla. Loc. R. 3.01(d) ("If a party fails to timely respond, the motion is subject to treatment as unopposed.").

## I.    Complaint

Smith alleges the following facts in support of his claims (Doc. 1 at 6–10):  At approximately 2:00p.m. on February 24, 2025, Smith attempted to leave E-Dormitory to go to his approved callout. (*Id.* at 6) As Smith excited the dayroom and stepped into the hallway, Sergeant Adekayode, without giving any verbal order, snatched the left shoulder of Smith's t-shirt, shoved him, and ordered him to return to the dorm. (*Id.*) Sergeant Adekayode followed Smith as he walked back toward the dayroom. (*Id.*)

As Smith was entering the dorm, Sergeant Adekayode snatched the back of Smith's t-shirt and dragged him to the hall, "slamming his face and chest first against the window." (*Id.*) Next, Sergeant Adekayode "without provocation, brutally struck [Smith] in the back of his head." (*Id.* at 7) Smith's ears began to ring, his vision was temporarily impaired, and his skull began to throb. (*Id.*)

2

Sergeant Adekayode ordered Smith to "cuff up," and Smith complied. (*Id.*) As Smith placed his hands behind his back, Sergeant Adekayode "began to intentionally strike [Smith] with [his] state issued [metal] handcuffs numerous times." (*Id.*)

Smith requested to be examined by medical personnel. (*Id.* at 8) Officer Rivera escorted Smith to medical professionals who examined him and gave him Ibuprofen. (*Id.*) Later that day, Smith was re-examined by medical professionals. (*Id.*) Next, he was placed in administrative segregation where he remained for four days. (*Id.*)

On February 26, 2025, while in administrative segregation, Smith submitted an informal grievance complaining about Sergeant Adekayode's use of excessive force and requesting an investigation. (*Id.*; Doc. 1-1 at 3–4) This caused Sergeant Adekayode to write a sham disciplinary report to cover up his assault on Smith. (Doc. 1 at 8)

On February 27, 2025, Smith's informal grievance was denied. (*Id.* at 9; Doc. 1-1 at 3) The stated basis for the denial was that the matter had been referred to the Inspector General for an investigation and "the review of [his] allegations had not been completed." (Doc.1-1 at 3) Smith was instructed to submit a form DC1-303 if he wished to proceed to the next level of the grievance process. (*Id.*)

On March 7, 2025, Smith submitted a formal grievance using form DC1-303. (Doc. 1-1 at 6) In his formal grievance, Smith requested to know the outcome of the investigation. (*Id.*)

On March 21, 2025, Smith's formal grievance was denied. (Doc. 1-1 at 8) The stated basis for the denial was that the FDOC's review of the situation was still under investigation. (*Id.*) Smith was instructed to complete "form DC1-303, providing attachments as required by paragraphs 33-103.007(3)(a) and (b), F.A.C., and forwarding [his] complaint to the Bureau of Policy Management and Inmate Appeals, 501 South Calhoun Street, Tallahassee, FL 32399-2500." (*Id.*)

On March 25, 2025, Smith proceeded to the next level of the grievance procedure by appealing the denial of his formal grievance. (Doc. 1-1 at 10) Additionally, he complained that "Officer M. Adekayode wrote a sham D.R. in attempt to cover his actions." (*Id.*) Smith attached a copy of the disciplinary report to his appeal and stated that the "disciplinary report was never processed nor was [he] subject to disciplinary sanctions for this incident." (*Id.*)

On April 7, 2025, Smith's appeal was "returned without action." (Doc.1-1 at 12) Smith was notified that the "issue regarding the disciplinary report is a separate issue and should be grieved . . . at the appropriate level." (*Id.*) Smith was instructed to resubmit his grievance in compliance with Chapter 33-103. (*Id.*) He was further instructed that "any inquiries into the investigation, to

include the results, is required to be addressed upon a DC6-236 form, Inmate Request, at the institutional level." (*Id.*) As of the date of the filing of Smith's Complaint, he still had not received the outcome of the investigation. (Doc. 1 at 10)

As a result of Sergeant Adekayode's use of force, Smith suffers throbbing pain on the back of his head, ringing in his ears, temporary vision loss, and headaches. (*Id.*) He also experiences fear, restricted breathing, accelerated heart rate, goose bumps, and a "faintish lightheaded feeling associated with panic and anxiety attacks." (*Id.*) Smith seeks to recover compensatory and punitive damages for Sergeant Adekayode's use of excessive force, assault, and intentional infliction of emotional distress. (*Id.* at 10–11)

## II.   Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Furthermore, mere naked assertions are not sufficient. *Id.*  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*  (quoting *Twombly*, 550 U.S. at 570).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### III.   Analysis

### *Eighth Amendment Excessive Force Claim*

Sergeant Adekayode argues that Smith's excessive force claim should be dismissed because Smith failed to exhaust his administrative remedies before initiating this action. (Doc. 13) Specifically, he argues that Smiths' failure to submit any further appeals and his failure to submit a form DC6-236 after his appeal was returned without action are fatal to his claim. (*Id.* at 13)

The Prison Litigation Reform Act requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action regarding prison conditions may be initiated by a prisoner. "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–

91 (2006). The failure to "properly exhaust" the administrative remedies will bar a prisoner from pursuing a claim in federal court. *Id*.

However, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, "failure to exhaust is an affirmative defense under the PLRA[.]" *Id*. A defendant bears the burden of proving that the prisoner did not fully exhaust his administrative remedies. *Id*.; *see also Dixon v. United States*, 548 U.S. 1, 8 (2006) (recognizing that the burdens of both production and persuasion are on the same party).

The Court must employ a two-step process when examining the issue of exhaustion of administrative remedies:

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d [1077, 1082 (11th Cir. 2008)]. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id*. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id*. at 1082–83; *see also id*. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the *Turner* procedure, "it is proper for a judge to consider facts

7

outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).

In his Complaint, Smith alleges that he "exhausted all levels of the Grievance procedure in accordance with the Florida Administrative Code Rule 33 at the time of filing this Complaint." (Doc. 1 at 9) Attached to his Complaint are copies of his informal grievance, formal grievance, and his appeal from his formal grievance. (Doc. 1-1) He alleges that despite his exhaustion of his administrative remedies, he "still has not heard or received results pertaining to the outcome of the investigation[.]" (Doc. 1 at 9) Taking these allegations as true, Sergeant Adekayode is not entitled to dismissal at the first step of the *Turner* analysis. 541 F.3d at 1082. Consequently, the Court turns to the second step of the *Turner* analysis.

The Florida Department of Corrections provides inmates with a three-step grievance process for exhausting administrative remedies:

> First, a prisoner must submit an informal grievance within 20 days of the incident. Fla. Admin. Code §§ 33-103.002(12), 33-103.005(1), 33-103.011(1)(a). The Florida Department of Corrections has 15 days to respond. *Id*. § 33.103.011(3)(a). Second, if the informal grievance is denied, the prisoner must appeal within 15 days of the denial by filing a formal grievance at the institutional level and attaching the contested informal grievance. *Id*. §§ 33-103.006(1)(a) and (2)(g), 33-103.011(1)(b)(1). Third, if the formal grievance is also denied, the prisoner must appeal within 15 days

of the denial by filing a grievance appeal with the Secretary of the Florida Department of Corrections and attaching the contested grievances. *Id.* §§ 33-103.007(1) and (4), 33-103.011(c). If an appeal is filed late or is otherwise out of compliance, it is returned to the prisoner without further processing, and the prisoner must refile a corrected version. *Id.* §§ 33-103.014(1), 33-103.011, 33-103.014(2).

*Arias v. Perez*, 758 F. App'x 878, 880–81 (11th Cir. 2019).

An informal grievance, formal grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code § 33-103.014(1). Relevant to this case, a grievance can be returned without action if it "addresses more than one issue or complaint[.]" *Id.* §§ 33-103.014(1), 33-103.005(2)(b). And, when a grievance is returned without action, a prisoner may refile the grievance "utilizing the proper procedure" if he has time remaining in which to do so. *Id.* § 33-103.014(2)(a).

Sergeant Adekayode argues that, although Smith properly submitted an informal and formal grievance, he failed to complete the remainder of the grievance process. Specifically, Smith failed to properly appeal the decision to deny the formal grievance despite being provided instructions on how to do so. Sergeant Adekayode points to the FDOC's return of Smith's appeal without action. (Doc. 1-1 at 12) The appeal was returned without action because, Sergeant Adekayode explains, inmates are limited to raising one issue per

9

grievance, but Smith raised two issues in his appeal: an inquiry into the status of the Inspector General's review and a new grievance that Sergeant Adekayode created a sham disciplinary report. Smith was instructed to resubmit his appeal in compliance with Chapter 33-103 and to submit a form DC6-236 at the institutional level. Because Smith took no further action, he failed to exhaust the grievance process.

In support of his motion, Sergeant Adekayode submits the declaration of Alan McManus, custodian of inmate grievance appeal records and Bureau Chief of the Bureau of Policy Management and Inmate Appeals. (Doc. 13-1) Mr. McManus reviewed the appeal log for appeals submitted by Smith from February to August of 2025. His review concluded that on April 7, 2025, the FDOC returned Smith's grievance appeal without action because "(1) inquiries into the status of investigations conducted by the Office of the Inspector General must be addressed by submitting from DC6-236 at the institutional level, and (2) a grievance may only address one issue or complaint." (*Id*. at 3) Mr. McManus further declares that "Smith did not submit any appeals to the Secretary of the FDOC after his March 31, 2025 appeal (Log Number 25-6-10655) was returned without action." (*Id*.)

Also in support of his motion Sergeant Adekayode submits the declaration of Classification Officer Janet Martinez of the FDOC's Central Florida Reception Center ("CFRC"). (Doc. 13-2) Officer Martinez declares that

10

she conducted a diligent search of Smith's inmate file maintained in the Classification Department at CFRC and "found no form DC6-236 requesting inquiry into the Officer of Inspector General Investigation as directed in Grievance Appeal 25-6-10655." (*Id*. at 1–2)

The Court finds that Sergeant Adekayode has satisfied his burden to show that Smith failed to exhaust the available grievance procedure before initiating this suit. The record shows (and Sergeant Adekayode concedes) that Smith adequately completed the first and second steps of the available grievance procedure by submitting both an informal and formal grievance. However, Smith's appeal of the denial of his formal grievance (the third step of the grievance process) was "returned without action" and with instructions on how he could proceed. Although he was afforded an opportunity to submit to the Court argument or records to show that he completed the third step of the grievance process, Smith neglected to do so. *See Britten v. Sprecher*, No. 4:24-cv-131-MW-MAF, 2025 WL 3898882, at \*5 (N.D. Fla. Dec. 16, 2025), *rep. & recommendation adopted*, 2026 WL 37626, at \*1 (N.D. Fla. Jan. 6, 2026) (recommending dismissal when plaintiff failed to respond to motion to dismiss because the unrebutted exhibits prove no grievance existed). Smith presented no evidence that he resubmitted his appeal in compliance with Chapter 33-103 or that he submitted a form DC6-236 at the institutional level. *See Smith v. Martin*, No. 3:24-cv-1088-TJC-LLL, 2026 WL 668338, at \*4 (M.D. Fla. Mar. 10,

11

2026) (noting that "the proper mechanism for curing a deficiency noted in a returned grievance is to refile the grievance 'within the applicable time frame' and 'utilizing the proper procedure'") (citing Fla. Admin. Code § 33-103.014(2)).

Smith's appeal was returned without action because his inquiry into the status of the investigation must be addressed by submitting form DC6-236 at the institutional level and because his appeal improperly contained two issues—his inquiry into the status of the investigation and his new grievance that Sergeant Adekayode created a sham disciplinary report. After his appeal was returned without action, Smith took no further steps to exhaust the grievance procedure. Therefore, his appeal of his formal grievance does not satisfy his exhaustion requirements. *See Jones v. Inch*, No. 3:21-cv-512-RV-HTC, 2021 WL 3134272, at *5 (N.D. Fla. June 21, 2021), *rep. & recommendation adopted*, 2021 WL 3131675 (N.D. Fla. July 23, 2021) ("A grievance that is returned for failure to comply . . . cannot serve as an exhaustion of administrative remedies.") (citing cases); *Lumpkin v. Fornshell*, No. 3:24-cv-1138-TJC-PDB, 2026 WL 759149, at *5 (M.D. Fla. Mar. 18, 2026) (ruling that a prisoner's grievance did not satisfy exhaustion requirements when it was returned without action due to a procedural defect). Filing a non-compliant grievance does not satisfy the exhaustion requirement regardless of whether it puts the institution on notice of the inmate's claims. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (recognizing that the law requires "proper

exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly). Accordingly, Smith's excessive force claim must be dismissed for failure to exhaust the available administrative process before filing suit.

### *Assault and Intentional Infliction of Emotional Distress*

In addition to his Eighth Amendment excessive force claim, Smith sues Sergeant Adekayode for assault and intentional infliction of emotional distress under Florida state law. Sergeant Adekayode's motion to dismiss is silent as these remaining claims.

Having already concluded that Smith's Eighth Amendment excessive force claim, over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1331, must be dismissed, the Court declines to exercise supplemental jurisdiction over his remaining state law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court."); *Busse v. Lee Cnty.*, 317 F. App'x 968, 973–74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [the] state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial.").

## IV.     Conclusion

Accordingly, for the reasons explained herein, the unopposed motion to dismiss (Doc. 13) is **GRANTED** to the extent that Smith's Eighth Amendment excessive force claim is **DISMISSED WITHOUT PREJUDICE** for his failure to exhaust his administrative remedies. Smith's state law claims for assault and intentional infliction of emotional dismiss are **DISMISSED WITHOUT PREJUDICE** to refiling in the appropriate state court. The Clerk is directed to terminate any pending motions, and to **CLOSE** this case.

DONE and ORDERED in Chambers in Tampa, Florida, this 2nd day of April, 2026.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**